IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Alexandria Division**

| | | |
|---|---|---|
| **N5 TECHNOLOGIES LLC,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:13-cv-386** |
| | ) | |
| **CAPITAL ONE N.A., et al.,** | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM OPINION

In this patent infringement case, N5 Technologies LLC ("N5"), the owner of U.S. Patent No. 7,197,297 ("the '297 patent"), sues defendants Capital One Bank (USA) N.A., Capital One Services LLC, and Capital One N.A. (collectively "defendants") for direct infringement and for inducing infringement of the '297 patent, which purports to cover a specific method of authenticating mobile station users to access private data via sending text messages to a private server. An Order issued on August 16, 2013 setting forth the relevant *Markman*[1] claim construction determinations. *N5 Technologies v. Capital One*, 1:13-cv-386 (E.D. Va., Aug. 16, 2013) (Order) (hereinafter "*Markman* Order"). Thereafter, defendants filed a motion for summary judgment.

For the reasons that follow, defendant is entitled to summary judgment because: (i) the accused method does not perform the Claim 1 authenticity checking steps in the order recited in the patent, as required by the *Markman* Order, and (ii) plaintiff has not offered admissible

---

[1] *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996).

evidence sufficient to create a triable issue of fact on the issue of infringement under the doctrine of equivalents.

## I.

Plaintiff N5, a Virginia limited liability company with its principal place of business in Manassas, Virginia, is the sole owner of the '297 patent, issued in 2007, titled "Authentication Method for Enabling a User of a Mobile Station to Access to Private Data or Services." N5, in the current vernacular, is a "non-practicing entity" claiming, without opposition, to own all right, title, and interest in the '297 patent.[2]

Defendants Capital One, N.A. and Capital One Bank (USA), N.A. are federally-chartered banking institutions with their principal places of business in McLean, Virginia. Defendant Capital One Services, LLC is a Delaware corporation with its principal place of business in McLean, Virginia. Capital One, N.A., Capital One Bank (USA), N.A., and Capital One Services, LLC are sued collectively for infringement and are referred to herein collectively as "defendants."

The '297 patent, which consists of 18 claims, recites a method for authenticating the user of a mobile station, *i.e.* a cell phone, to allow that user to access private information stored on a private server by sending a text message request from the user's mobile station. Plaintiff alleges that defendants' mobile banking service infringes on the claimed method of the '297 patent. Defendants' mobile banking service allows customers to access account information, such as their balance or the last transaction posted to their account, by sending a text message from an authenticated mobile station.

---

[2] Accordingly, no standing issue is presented. *Cf. Suffolk Technologies LLC v. AOL Inc.*, 910 F. Supp. 2d 850 (E.D. Va. 2012) (adjudicating whether assignee of patent possessed "all substantial rights" to patent and therefore had standing to sue putative patent infringers).

On October 25, 2012, plaintiff filed a complaint in the United States District Court for the

Eastern District of Texas, alleging that defendants' mobile banking services infringe independent

Claim 1, and dependent claims 2, 3, 4, 6, 8, 9, and 10 of the '297 patent. On March 25, 2013,

the case was transferred to this district.

The sole independent claim in the '297 patent is Claim 1, and as such, there can be no

infringement of any dependent claim unless Claim 1 is also infringed. Accordingly, the parties'

sole focus on summary judgment is appropriately on Claim 1.

Claim 1 "provides a method for accessing private data or services over a public network

including the step of authenticating a user of a mobile station [] for accessing to private

data/services." '297 Patent, Col. 1, ll. 45-48. Claim 1—with limitations pertinent to summary

judgment in bold—reads as follows.

> **1.** Method for accessing private data or services from a mobile station over a
> public network including the step of authenticating a user of the mobile station for
> accessing to private data/services, comprising the steps of:
>> composing a text-based request message on the mobile station using a
>> standard public messaging protocol, said message including a request for
>> private data, and sending said request message to a private server (MG,
>> PS) offering the access to said private data/services, via telephone
>> network,
>> checking the authenticity of the user of the mobile station based on the request
>> message received by the server,
>> if the authenticity of the user of the mobile station is confirmed, composing a
>> text-based response message using a standard public text messaging
>> protocol, the response message including the requested private
>> data/services of the private server, and sending back to the mobile station
>> said text-based response message, via the telephone network,
> wherein the request message additionally includes a user unique identifier, and is
> received by the private server with an appended user mobile station number,
> **wherein the authenticity checking performed by the private server comprises
> the steps of:**
>> **checking whether the user unique identifier is stored in a private
>> directory database, and**
>> **checking whether the appended user mobile station number matches with
>> the user mobile station number allocated to the user unique identifier
>> stored in the private directory database;**

and wherein, if the user authenticity is confirmed, an interaction between the private server and the mobile station is limited to the exchange of the text-based request message and the text-based response; and repeating the recited steps for any further interaction between the private server and the mobile station.[3]

The August 16, 2013 *Markman* Order set forth the following claim term definitions, all concerning limitations in Claim 1:

- **Term 1: "user unique identifier."**

  Definition: "data that uniquely identifies a mobile station user."

- **Term 2: "checking the authenticity of the user."**

  Definition: The plain language is adequately clear and needs no further definition.

- **Term 3: The order for executing the steps of "checking whether the user unique identifier is stored in a private directory database" and "checking whether the appended user mobile station number matches with the user mobile station number allocated to the user unique identifier stored in the private directory database."**

  Definition: "checking whether the user unique identifier is stored in a private directory database" must be executed before "checking whether the appended user mobile station number matches with the user mobile station number allocated to the user unique identifier stored in the private directory database."

Following the issuance of the *Markman* Order, defendant filed a motion for summary judgment on four independent grounds. Because the first of these independent grounds—that the accused system does not infringe the authenticity checking steps of Claim 1—is dispositive, the other three grounds are neither reached nor decided.[4]   Accordingly, the three questions presented in this motion for summary judgment are:

---

[3] '297 Patent, Col. 6, ll. 36-67, Col. 7, ll. 1-4 (emphasis added).

[4] The remaining three grounds on which defendant moved for summary judgment are:

   i.   that the text messages in the accused method do not include a "user unique identifier" in addition to a "request for private data," as required by Claim 1;

i.      Whether summary judgment is appropriate with respect to literal infringement of Claim 1's authenticity checking steps.

ii.      Whether plaintiff's proffered evidence on the doctrine of equivalents, if admissible, is sufficient to establish a triable issue of fact on whether the accused system infringes Claim 1's authenticity checking steps under the doctrine of equivalents.

iii.      Whether plaintiff's proffered evidence on the doctrine of equivalents is admissible, given that the sole evidence on which plaintiff relies is a statement in defendants' expert report on an issue of invalidity.

## II.

The summary judgment standard is too well-settled to merit extended discussion, and the parties do not dispute the standard. Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56, Fed. R. Civ. P. A genuine factual dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III.

In patent infringement cases, the Federal Circuit teaches that "summary judgment on the issue of infringement is proper when no reasonable jury could find that every limitation recited in a properly construed claim either is or is not found in the accused device [or method] either literally or under the doctrine of equivalents." *PC Connector Solutions LLC v. SmartDisk Corp.*, 406 F.3d 1359, 1364 (Fed. Cir. 2005). A determination of patent infringement requires a two-step inquiry. First, the court must construe the patent claims as a matter of law. *Advanced*

---

ii.      that the accused method does not repeat the recited steps of Claim 1 for "any further interaction" between the mobile phone and the private system, as required by Claim 1; and

iii.      that defendants neither direct or control others in their performance of the claimed steps nor actively induce infringement of the asserted claims.

*Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 261 F.3d 1329, 1336 (Fed. Cir. 2001). The August 16, 2013 *Markman* Order and accompanying Memorandum Opinion completed the first step in this inquiry. *See N5 Technologies LLC v. Capital One N.A.*, 1:13-cv-386, 2013 WL 5876978 (E.D. Va. Oct. 29, 2013); *N5 Technologies v. Capital One*, 1:13-cv-386 (E.D. Va., Aug. 16, 2013) (Order). Next, the claims must be compared to the accused device or method to determine whether the accused device or method contains each limitation of the claims as properly construed, either literally or under the doctrine of equivalents. *See Advanced Cardiovascular Sys.*, 261 F.3d 1329 at 1336. Infringement must be "establish[ed] by a preponderance of the evidence." *Id.*

It is well-settled that "[t]o prove literal infringement, the patentee must show that the accused device [or method] contains every limitation in the asserted claims." *Cybor Corp. v. FAS Technologies, Inc.*, 138 F.3d 1448, 1467 (Fed. Cir. 1998). By contrast, under the doctrine of equivalents, "a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997). Importantly, in this regard, the Supreme Court has made clear that the doctrine equivalents must be applied in a rigorous and precise manner, holding that "each element contained in a patent claim is deemed material to defining the scope of the patented invention, and thus the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole." *Id.* at 29. In other words, a district court must consider each element of the allegedly infringed claim to determine whether there is equivalence between *each* of those elements and the accused device or method. If there is not equivalence between the accused device or method and *any one*

- 6 -

element of the patent claim in issue, then there is no infringement under the doctrine of equivalence.

One test for infringement under the doctrine of equivalents is the interchangeability test, which asks whether the claimed device or method is interchangeable with the accused device of method. Specifically, "[r]ather than focusing on physical or electronic compatibility. . . , the known interchangeability test looks to the knowledge of a skilled artisan to see whether that artisan would contemplate the interchange as a design choice." *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1383 (Fed. Cir. 2001). For example, in *Interactive Pictures*, a patent case involving imaging software, the Federal Circuit upheld a jury verdict finding equivalence between the accused equirectangular panorama file and the claimed digital fisheye image. *Id.* To prove infringement under the interchangeability test, the Federal Circuit has made clear that:

> [A] patentee must . . . provide particularized testimony and linking argument as to the 'insubstantiality of the differences' between the claimed invention and the accused device or process . . . to support a finding of infringement under the doctrine of equivalents. Such evidence must be presented on a limitation-by-limitation basis. Generalized testimony as to the overall similarity between the claims and the accused infringer's product or process will not suffice."

*Texas Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996). It remains to apply these principles to the facts of the case to determine whether summary judgment is appropriate.

## IV.

### A. Literal Infringement

Defendants' argue that there is no literal infringement of Claim 1 because the record indisputably shows that the accused system does not perform the authenticity checking steps in the order recited in Claim 1, whereas the *Markman* Order required that "the steps of Claim 1

- 7 -

must be performed in the order stated in the claim."[5]  More specifically, the August 16 *Markman*

Order held that Claim 1 requires that the following two steps be performed in the order recited:

> checking whether the user unique identifier is stored in a private directory
> database, and
> checking whether the appended user mobile station number matches with the user
> mobile station number allocated to the user unique identifier stored in the
> private directory database . . . . ('297 Patent, Col. 6, ll. 60-65).

It is undisputed that the accused system performs the authenticity checking steps in reverse of the

order stated in the patent claim: the server first checks the mobile station number, and if a match

is found, it then cross-references the mobile station number with the user nickname, if any.

Thus, plaintiff has understandably conceded that, given the *Markman* Order, it cannot prove by a

preponderance of the evidence that the accused system literally infringes Claim 1.[6]  *See*

*Advanced Cardiovascular Sys.*, 261 F.3d at 1336 (noting that patent infringement claims must be

proven by a preponderance of the evidence).

### B. Infringement under the Doctrine of Equivalents

Although plaintiff concedes that literal infringement cannot be proven given the

*Markman* Order's determination that the authenticity checking steps must occur in the order

recited, plaintiff nonetheless argues that it can establish infringement under the doctrine of

equivalents.  Yet importantly, plaintiff itself has presented no evidence of infringement under a

doctrine of equivalents theory.  Rather, plaintiff's doctrine of equivalents case rests entirely on a

statement made in defendants' expert Gerald Christensen's report relating to invalidity.  In that

report, Christensen wrote that, "[t]he order for checking these two pieces of information is a

---

[5] *N5 Technologies LLC v. Capital One N.A.*, 1:13-cv-386, 2013 WL 5876978 at *7 (E.D. Va. Oct. 29, 2013).

[6] Although plaintiff concedes that it cannot prove literal infringement given the *Markman* Order, plaintiff maintains that if the authenticity checking steps need not be performed in the order recited in Claim 1, it can prove literal infringement.

mere design choice that a person of ordinary skill in the art would have found obvious to execute either before or after each other." *N5 Technologies v. Capital One*, 1:13-cv-386 (E.D. Va., Sept. 5, 2013) (Jardieu Decl., Ex. 5; "Expert Report of Gerald Christensen").

This statement by Christensen, plaintiff argues, is sufficient to establish infringement under the doctrine of equivalents because it is substantial evidence that demonstrates equivalence under the interchangeability test, which requires that "the knowledge of a skilled artisan . . . would contemplate the interchange as a design choice." *Interactive Pictures*, 274 F.3d at 1383. Defendants make two arguments against plaintiff's assertion. First, defendants argue that even if admissible, the statement by Christensen is insufficient for a reasonable jury to find infringement under the doctrine of equivalents. Second, defendants argue that the statement by Christensen is not admissible at trial. Each of those arguments is addressed separately below.

### 1. Assuming the record evidence on the doctrine of equivalents is admissible, whether it is sufficient to establish infringement

Analysis properly begins with a determination of whether plaintiff's proffered evidence on the doctrine of equivalents, assuming it is admissible, is sufficient to permit a reasonable jury to find infringement. *See Overhead Door Corp. v. Chamberlain Grp., Inc.*, 194 F.3d 1261, 1269 (Fed. Cir. 1999) ("[T]he trial court should grant summary judgment in any case where no reasonable fact-finder could find equivalence."). Specifically, it must be determined whether Christensen's statement is sufficient evidence to allow a reasonable jury to find by a preponderance of the evidence that the "the differences between the [claimed and accused methods] are 'insubstantial' to one of ordinary skill in the art." *Id.*[7]

---

[7] *See also Stumbo v. Eastman Outdoors, Inc.*, 508 F.3d 1358, 1364 (Fed. Cir. 2007) ("A finding of infringement under the doctrine of equivalents requires a showing that the difference between the claimed invention and the accused product was insubstantial."); *Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354, 1357 (Fed. Cir. 2004) ("[T]he requirement that

Plaintiff's argument under the doctrine of equivalents is based solely on the fact that one Federal Circuit opinion uses the phrase "design choice" when discussing the insubstantiality test and that defendants' expert also used the phrase "design choice" in his report on invalidity. Specifically, in *Interactive Pictures*, the Federal Circuit stated that the insubstantiality test "looks to the knowledge of a skilled artisan to see whether that artisan would contemplate the interchange as a design choice." 274 F.3d 1371, 1383 (Fed. Cir. 2001). And in Christensen's report, he wrote that "[t]he order for checking these two pieces of information is a mere design choice." *N5 Technologies v. Capital One*, 1:13-cv-386 (E.D. Va., Sept. 5, 2013) (Jardieu Decl., Ex. 5; "Expert Report of Gerald Christensen").

Plaintiff's proffered doctrine of equivalents evidence falls far short of the Federal Circuit's evidentiary standard that "a patentee . . . provide particularized testimony and linking argument as to the 'insubstantiality of the differences' between the claimed invention and the accused device or process . . . to support a finding of infringement under the doctrine of equivalents." *Texas Instruments*, 90 F.3d at 1567.[8] By no means is Christensen's statement particularized, and he provides no linking argument on the insubstantiality of the differences between the claimed and accused systems.

This conclusion finds substantial support in other cases in which the Federal Circuit has found that the plaintiff failed to present sufficient evidence to support a finding of infringement

---

equivalence be evaluated from the perspective of one of ordinary skill in the art applies whether equivalence is measured by the 'function-way-result' test or by the 'insubstantial differences' test.").

[8] *See also AquaTex Indus., Inc. v. Techniche Solutions*, 479 F.3d 1320, 1329 (Fed. Cir. 2007) ("[W]hen the patent holder relies on the doctrine of equivalents, as opposed to literal infringement, the difficulties and complexities of the doctrine require that evidence be presented to the jury or other fact-finder through the particularized testimony of a person of ordinary skill in the art, typically a qualified expert, who (on a limitation-by-limitation basis) describes the claim limitations and establishes that those skilled in the art would recognize the equivalents.").

under the doctrine of equivalents. In *Texas Instruments*, for example, the Federal Circuit found the plaintiff's proffered evidence from two expert witnesses insufficient because the "overwhelming majority of [one witness's] testimony . . . was solicited for purposes of establishing literal infringement" and the second witness's testimony lacked particularized information on how and why the claim limitations were equivalent. 90 F.3d at 1567-68. Similarly, in *AquaTex*, the Federal Circuit held that summary judgment was appropriate because the plaintiff "only provided lawyer argument and generalized testimony about the accused product" given that plaintiff's proffered testimony "did not specifically address equivalents or compare [the accused] product to the patented method on a limitation-by-limitation basis." 479 F.3d at 1329. And in *Stumbo*, the Federal Circuit found that "the declaration of [plaintiff's] engineering expert that stated in conclusory fashion that the ways the two [products] operated were not 'significantly different'" was insufficient because the "declaration did not explain how either [product] operated or how the differences were insubstantial." 508 F.3d at 1365.[9] Thus, a finding that the differences between two systems are insubstantial requires particularized testimony and linking argument explaining *how* and *why* the differences are insubstantial; conclusory statements or evidence submitted for other purposes will not suffice.

---

[9] By contrast, much more evidence on interchangeability was proffered in the cases cited by plaintiff in which the Federal Circuit found there was evidence sufficient to establish infringement under the doctrine of equivalents. *See, e.g.*, *Interactive Pictures*, 274 F.3d at 1383 ("[Plaintiff's expert] showed the jury both a fisheye image and an image in an equirectangular panorama format, while testifying that one can be derived from the other. He also explained that perspective-correction processing of one of the two image forms is substantially the same as that of the other, and he illustrated the similarity with reference to Infinite's own block diagrams of the processing steps."); *Overhead Door*, 194 F.3d at 1269 ("The record contains considerable evidence, including several reports and declarations by [plaintiff's] expert . . . that one of ordinary skill in the art would find the Intellicode's software-driven memory selection system insubstantially different from the hardware switch of claim 1.").

Although Christensen's statement pertains to specific claim limitations rather than the method as a whole, Federal Circuit precedent makes clear that Christensen's statement in his invalidity report that the ordering of the authenticity checking steps was a design choice does not satisfy the Federal Circuit requirement of "particularized testimony and linking argument as to the 'insubstantiality of the differences' between the claimed invention and the accused device or process." *Texas Instruments*, 90 F.3d at 1567.  In particular, as in *Texas Instruments* and *Stumbo*, Christensen's statement contains no information on *how* or *why* the differences between the claimed and accused methods are insubstantial.

Furthermore, it is settled that evidence of literal infringement is insufficient to raise a genuine issue of fact on the issue of infringement under the doctrine of equivalents. *See Lear Siegler, Inc. v. Sealy Mattress Co. of Michigan, Inc.*, 873 F.2d 1422, 1425 (Fed. Cir. 1989) ("The evidence and argument on the doctrine of equivalents cannot merely be subsumed in plaintiff's case of literal infringement.").  This is because a plaintiff must submit particularized testimony that directly and specifically supports plaintiff's doctrine of equivalents infringement theory. Christensen's statement—one sentence in defendants' expert report on the separate issue of invalidity—is far less probative of infringement under the doctrine of equivalents than a plaintiff's own literal infringement evidence, which the Federal Circuit has deemed insufficient to show infringement under the doctrine of equivalents.  Thus, Christensen's conclusory assertion that, in the context of invalidity, the order of the authenticity checking steps is a "design choice" does not provide the required "particularized testimony and linking argument as to the 'insubstantiality of the differences' between the claimed invention and the accused device or process." *See Texas Instruments*, 90 F.3d at 1567.  Accordingly, for these reasons, plaintiff's

evidence on the doctrine of equivalents, even if admissible, is insufficient to support a finding of infringement under the doctrine of equivalents.

**2. Whether plaintiff may enter into evidence defendants' expert report or compel the testimony of defendants' expert at trial**

Even assuming Christensen's statement may be sufficient evidence for a reasonable jury to find infringement under the doctrine of equivalents, defendants are nonetheless entitled to summary judgment as plaintiff cannot produce admissible evidence to show infringement under the doctrine of equivalents, an issue on which plaintiff carries the burden of proof. Pursuant to Rule 56(c)(1), Fed. R. Civ. P., a party is entitled to summary judgment if there is no genuine issue of material fact because the "adverse party cannot produce admissible evidence to support the fact." Defendants solicited Christensen's expert report in preparation for a potential invalidity defense. Of course, defendants have the option of not calling Christensen at trial. In that event, the question becomes whether plaintiff could successfully offer Christensen's statement into evidence, either through the report itself or by calling Christensen as a witness.

To begin with, Christensen's expert report is not admissible under an exception to the hearsay rule. Plaintiff argues that the report is admissible under either Rule 801(d)(2), Fed. R. Evid. (governing the hearsay exception for statements by opposing parties) or under Rule 807, Fed. R. Evid. (providing a residual exception to the general prohibition on hearsay). Both arguments miss the mark.

Although there is no Federal Circuit authority on point, the Third Circuit in *Kirk v. Raymark Industries* squarely addressed and rejected the contention that an opponent's expert report is admissible under Rule 801(d)(2). Pursuant to this rule, a statement is not admissible as an opposing party's statement unless it "was made by the party's agent or employee" or "was made by a person whom the party authorized to make a statement on the subject." Rule

801(d)(2), Fed. R. Evid. Given this, the Third Circuit concluded in *Kirk* that, "since an expert witness is not subject to the control of the party opponent with respect to consultation and testimony he or she is hired to give, the expert witness cannot be deemed an agent." *Kirk v. Raymark Indus., Inc.*, 61 F.3d 147, 164 (3d Cir. 1995). An expert report therefore is not admissible under Rule 801(d)(2) absent a showing—not present here—that the expert was acting as the party's agent or employee or was specifically authorized to make a statement on that subject. Christensen is not defendants' agent or employee, nor did defendants specifically authorize Christensen to make any statement on the doctrine of equivalents. Christensen's statement is thus not admissible under Rule 801(d)(2).

Plaintiff's Rule 807 argument is equally unpersuasive. Rule 807 requires that evidence admitted under the residual exception be "more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts." Rule 807, Fed. R. Evid. Here, plaintiff, through reasonable efforts, could have retained its own expert and presented testimony on the doctrine of equivalents, but chose not to do so.[10] Plaintiff must now live with the consequences of this choice and may not escape those consequences by seeking to admit defendants' expert report into evidence via Rule 801(d)(2) or Rule 807.

Given that Christensen's report is not admissible, analysis next proceeds to whether plaintiff may call Christensen as a witness at trial if defendants choose not to call him. As an initial matter, if Christensen chose not to appear voluntarily, it appears there is no power to subpoena him. Rule 45(c)(1)(A), Fed. R. Civ. P. provides that "[a] subpoena may command a person to attend a trial, hearing, or deposition . . . within 100 miles of where the person resides,

---

[10] See *deMars v. Equitable Life Assur. Soc. of U. S.*, 610 F.2d 55, 61 (1st Cir. 1979) (refusing to admit evidence under Rule 807 because the proponent "made no effort at all to obtain the opinion of another [expert]").

is employed, or regularly transacts business in person." According to defendants' witness list, Christensen resides in Sequim, Washington, which is more than 100 miles from the trial location. Because there is no record evidence that Christensen regularly transacts business in person within 100 miles of Alexandria, Virginia, it appears that he is not within the subpoena power of this forum.

Yet, even assuming the existence of power to subpoena Christensen, he would not be required to testify on plaintiff's behalf because plaintiff cannot, in the circumstances of this case, compel at trial the testimony an expert retained and designated by defendants under Rule 26, Fed. R. Civ. P. Although there is no governing circuit court precedent, the First and Eleventh Circuits have addressed the issue and concluded that whether a witness designated as an expert, but not called at trial, may be required to testify for the opposing party "is committed to the sound discretion of the district court." *Peterson v. Willie*, 81 F.3d 1033, 1037–38 & n. 4. (11th Cir. 1996).[11] In applying this discretionary balancing standard, courts have routinely weighed:

---

[11] *See also Jasty v. Wright Med. Tech., Inc.*, 528 F.3d 28, 39 (1st Cir. 2008) (noting that "a trial court has discretion to decide whether to require a witness to testify for an opposing party," and holding that the district court did not abuse its discretion in refusing to allow plaintiff to compel the testimony of defendant's expert when defendant chose not to call said expert at trial). Neither *Peterson* nor *Jasty* discuss whether or not there was subpoena power over the expert witness at issue.

Plaintiff cites several cases in support of its contention that plaintiff may call defendants' witness in plaintiff's case-in chief. The cited cases stand for the unremarkable principle that whether a party may call an adverse party's witness is committed to the discretion of the district court. Each of the cited cases is distinguishable and unpersuasive in the circumstances of this case. In *Kerns v. Pro-Foam of S. Alabama, Inc.*, the court noted the discretionary nature of the determination and concluded that, in the particular factual circumstances of that case, wherein the expert was already in the courtroom at trial, "[a]llowing plaintiffs to call [defendants' expert] in their case-in-chief would neither reward nor penalize anyone." 572 F. Supp. 2d 1303, 1311 (S.D. Ala. 2007). *Penn Nat. Ins. v. HNI Corp.* likewise noted the discretionary nature of the decision and concluded that a party could seek a subpoena to compel the opposing party's expert to appear at trial because under the circumstances, the opposing party would "face[] no undue prejudice." 245 F.R.D. 190, 194 (M.D. Pa. 2007). In *House v. Combined Ins. Co. of Am.,*, the

"[i] the interests of the party seeking access to the expert and [ii] the interests of the court in an informed resolution of the claims in the case, balanced against [iii] the possibility of prejudice arising from prior retention of the expert by the opposing party." *House*, 168 F.R.D. at 244 (citing *Rubel v. Eli Lilly & Co.,* 160 F.R.D. 458, 460 (S.D.N.Y.1995)).

In this case, there is no persuasive reason to exercise discretion in favor of allowing plaintiff to call Christensen and force him to give testimony against defendants. Plaintiff made a choice not to present evidence on the doctrine of equivalents, and there is no unfairness in forcing plaintiff to live with the consequences of that choice. Plaintiff's interests would therefore not be unfairly prejudiced by a decision not to require Christensen's testimony. Moreover, judicial interest in an informed resolution of the issue would not be compromised by refusing to compel Christensen to appear at trial to provide testimony on a single statement in his report on invalidity. Accordingly, even if Christensen's statement were sufficient to create a genuine issue of material fact under the doctrine of equivalents, the statement is not admissible.

## V.

In sum, defendant is entitled to summary judgment on both literal infringement and infringement under the doctrine of equivalents. There is no literal infringement because the accused method does not perform the authenticity checking steps in the order recited in Claim 1, as the *Markman* Order requires. Plaintiff's allegation of infringement under the doctrine of equivalents fails because plaintiff has produced no admissible evidence to create a triable issue of fact on infringement under the doctrine of equivalents. And because Claim 1 is the 297

---

court applied a "discretionary balancing of probative value versus prejudice" and ultimately concluded that under the factual circumstances of the case, plaintiff was permitted to call defendant's expert witness at trial, even though defendant withdrew its expert designation and decided not to call the witness. 168 F.R.D. 236, 249 (N.D. Iowa 1996).

patent's sole independent claim, plaintiff's allegations of infringement of various dependent claims also fail.

An appropriate Order will issue.


Alexandria, VA
January 30, 2014


T. S. Ellis, III
United States District Judge